Howard D. Adams *v.* James L. Leeds Company, lately composed of James L. Leeds and Henry C. Elliott, Deceased, in which Lucille Mary Elliott has been substituted as Defendant in place of said Henry C. Elliott, Deceased.

*Partnership—Liability of incoming partner for prior debt—Evidence.*

The Supreme Court will not reverse a judgment on a verdict in favor of the plaintiff in an action against a partnership where the evidence for the plaintiff tends to show that the debt, originally contracted by one of the partners in a business solely owned by himself, was subsequently assumed by a partnership which he formed with the other defendant.

*Partnership—Confession of judgment.*

A judgment confessed by one partner in the firm name for a firm debt is good against the partner confessing it, and under it partnership goods may be taken in execution: Grier *v.* Hood, 25 Pa. 430; Ross *v.* Howell, 84 Pa. 129.

Argued Jan. 23, 1900. Appeal, No. 393, Jan. T., 1899, by defendants, from judgment of C. P. No. 3, Phila. Co., Sept. T., 1897, No. 549, on verdict for plaintiff. Before McCOLLUM, MITCHELL, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Issue to determine the validity of a confessed judgment. Before McMICHAEL, J.

The court charged as follows:

On June 12, 1896, James L. Leeds, who seems to have been in business, and the owner of certain machinery, assigned it to a Mr. John H. Scott, for value. We have not been told the history of the transaction in full, but it appears from the papers that there was a bill of sale from Leeds to Scott. On November 13, 1896, Scott assigned, transferred and set over unto Howard D. Adams and his assigns, " All my right, title and interest in and to the above bill of sale." And it appears, I believe, from the testimony, that Adams paid Scott, by a cashier's check, $6,000. There was with that bill of sale a list of machinery and goods transferred. James L. Leeds, by paper which bears date November 14, assigned to Howard D. Adams,

for a valuable consideration as stated in the assignment, the same goods, machinery and so on that Scott had assigned, and Leeds was paid the sum of $2,000. That made $8,000, and that has been treated all through this case as a loan of Adams to James L. Leeds. That seems to be the interpretation put upon the transaction, as far as it went, by both counsel; treated as a loan from Adams to James L. Leeds, who was then trading, I believe, as James L. Leeds. After those bills of sale which transferred Scott's interest and transferred Leeds's interest, transferred the whole interest in the property, and perhaps paid Scott, if he was a creditor . . . . we do not know about that . . . . immediately after that was done, Adams, who was the owner of the machinery, leased it to Leeds at a rental. That lease provided that Leeds should pay Adams $1,620 a year—$135 a month—and that was to continue from year to year. And it provided for several remedies that Adams was to have in case, first, rent was not paid; and, second, if Adams re-entered to take possession of his property and did not find enough there. The clause as to the amount to be paid was that Leeds agreed to pay Adams for the use of the same (that is, the machinery) $1,620, and then there were various covenants about taking good care of it, not removing it, etc.; and it was also provided that, " if Leeds desires to purchase said leased property, Adams agrees to sell the same for the sum of $8,000." That was in the lease. That is, Adams, who had the right of property by bill of sale, leased it to Leeds at a fixed rental of so much a year, divided into monthly payments, and gave Leeds the option to purchase. The next matter that occurred between Leeds and Adams at that time, November 14, 1896, was that Leeds gave Adams a judgment note for $8,000, dated Philadelphia, November 14, 1896 : " Pay to the order of Howard D. Adams $8,000." Then follows the warrant, as we call it, for an attorney to enter that up. And at the same time he gave the judgment note, an agreement was entered into by Leeds and Adams, which is in writing, which is here. It recited the assignment of the bill of sale executed by Leeds on November 14, 1896, the consideration that Adams had become the owner of the machinery, and so on. And it recited the agreement of the lease, and the covenants of the lease are cited (some of them), and the judgment note. And then comes the following, to

which I call your attention: " The said Howard D. Adams, in the event of there not being said amount of property on said premises, shall have the right to enter judgment on said note, and recover the difference between the value of the property on said premises and said sum of $8,000. And said Adams agrees that he will not enter said judgment note unless the said James L. Leeds shall be sued, or unless the said Howard D. Adams shall re-enter and there shall not be found upon said premises property to the value of $8,000." And then Leeds agrees that he will not confess judgment to anybody else. And the agreement recites that, " At the end of one year from date, and at any time thereafter during the continuance of this agreement, the said James L. Leeds shall have the right to repurchase the machinery, lumber, goods and fixture hereinbefore referred to upon the payment to the said Howard D. Adams of the sum of $8,000, together with any and all rentals due for any year or portion of the year for which settlement has not been made. Now, as I have said, those were the agreements between Leeds and Adams, and, if I recollect aright, those were made about November, 1896. About March, 1897, Henry C. Elliott came into the firm, or, speaking accurately, formed a partnership with James L. Leeds. The firm name was James L. Leeds Company. Henry C. Elliott came into that firm. As to the exact date of that, there seems to be some doubt. The articles of copartnership are dated March 18; the payment of money seems to have been subsequent thereto, part of it, at any rate. Afterwards, on October 26, 1897, James L. Leeds and Howard D. Adams canceled the former judgment note, canceled the lease and agreement, and James L. Leeds executed a judgment note, that is, signed a judgment, " James L. Leeds Company, James L. Leeds," that was dated Philadelphia, October 26, 1897: " One day after date we promise to pay to the order of Howard D. Adams $8,000 without defalcation," and so on, with a warrant of attorney to confess judgment with commissions, and so on. And, upon that, execution was issued, but not immediately. It was not entered up, I believe the record shows, until the third period of November; executed October 26, execution issued November 3. Under that writ of fieri facias the sheriff seized all the firm property, I presume, but at any rate all he was directed to, all the firm property of James L. Leeds

Company, and, besides that, what are called attachment executions were issued direct to the various debtors of the firm of James L. Leeds Company. Then the legal history of the case begins, which I will make as short as I can to explain it. Then Mr. Elliott came in, and upon his affidavits and depositions, and so on, the court below, our court, determined that the judgment should be open, as it is called, and that a court and jury should decide the merits of the controversy. The execution was set aside. The court above, it so appears on the record, said that the liens of the writs, as it is called (that is, the grasp upon the firm's goods) should have been retained until the court and jury settled this matter, but affirmed us in opening the judgment; and that is the way it comes before you. Now, gentlemen of the jury, that, without deciding all the testimony—though I will have something to say about some of the papers hereafter—is the history of the case, as I understand it, as it comes to you. Now, I shall, because I should think you should know, give you the general principles of law, and then shall endeavor to show how those principles should be applied. And first of all— for it is of great importance—I desire to call your attention very briefly to what the law is in relation to the liability of an incoming partner for the debts which were contracted before he came into the firm, or by the other partner before the partnership was formed. The rule is that an incoming partner is not by presumption of law liable. He is, however, liable if he assumes the debt, and the burden of proof, as it is called, is on the one that asserts that he is liable; that is, to restate it, an incoming partner is only liable for the debts contracted before he came in, if it be proved to the satisfaction of the jury by competent evidence that he assumed the obligation or debt. I do not intend to give all the nice distinctions, but that is the general rule, as I suppose business men know, but it is the law of Pennsylvania, as I understand it.

The second general principle which I desire to call your attention to is that a partner (and I propose to call your attention to many things that he may do) may confess a judgment for a firm debt which will bind the firm's assets, but he may not —he has no power to—confess a judgment for a debt which has not been assumed by the firm. Now, that seems to be, and I think is, the law, and with those two simple and general max-

ims of the law before you, which are sound, good common sense, and business doctrine too, as well as the law, you will come to the decision of the questions of fact in this case; first of all, remembering that an incoming partner is not liable for a debt contracted before he came into the firm, or before the partnership was formed; and also remembering that a man may confess judgment, but only for a firm debt—I mean, confess a judgment which will bind firm assets. So we come to the questions of fact which I shall leave to your determination. [The first question of fact which you will have to determine is, did the new firm, James L. Leeds and Henry C. Elliott, assume that which was an existing debt of James L. Leeds? If they did not, or if there was no assumption of that debt, your verdict ought to be for the defendant. If, however, they did,—if you are convinced by the evidence that they did assume that debt,—then the partner, James L. Leeds, had a right to confess a judgment for it, and it was an existing obligation of the firm, with the qualifications that it had been a business debt, and that he could not, in fraud of the rights of his partner, and of the creditors of the firm, vary the obligation.] [2]

\* \* \* \* \* \* \* \*

Now, gentlemen of the jury, the question being for your determination whether Elliott assumed the debt or loan which Leeds owed Adams, you must look at all the testimony, you must look at all the circumstances surrounding the formation of the partnership. You must look and see whether, first, there was any assumption by words by Elliott of that debt; second, if there was no such assumption, whether you are convinced by the evidence that he did assume that debt. You are to look at the books, and particularly those entries which have been called to your attention. You may recollect there are two or three entries in the books, and the headings and style of the entry may be of great assistance to you in determining those important questions. You are to look at the payments by Mr. Elliott to Mr. Adams. You will recollect that at first they were called interest, and afterwards changed to rentals. And the receipts, and how those receipts are made. You will scrutinize carefully the conflicting testimony—if it is in conflict—of Mr. Elliott and Mr. Leeds in that regard, and though I have gone over the testimony carefully, I do not propose to endeavor to

analyze it for you. It may be that it will be necessary for you to consider quite carefully——you have heard the testimony read ——whether Mr. Elliott knew of the loan, for I think in his testimony he says he knew of the loan——that is, that there was of Leeds to Adams——and whether Mr. Elliott, by his words or deeds, agreed that the firm thereafter should be responsible for that. The Supreme Court has said in one or two cases that the payment of interest by the new firm, though an item of testimony to be left to the jury, is not controlling. You may consider it with all the other elements of the case in coming to the conclusion whether or not the new firm or Mr. Elliott himself assumed the old debt. I need not go over that further. The question is one on which there has been a good deal of testimony. There are the entries in the books, the statements, the letters and the oral testimony and the depositions. It may be that you will take the view of the one side or the other. That is your duty, to decide upon the testimony. While the construction of written papers is for the court, yet the whole testimony, I think, in this case, must be submitted to you. I cannot say that I have formed an opinion——whether the mere statement on the books, the heading, " Howard D. Adams, capital account," and what comes after it, or, on the other side, the proved statements by Elliott on behalf of the firm, in which a loan is spoken of of the same amount, controlled it. You must decide those questions. Of course, if there is any question of interpretation of any paper, which shall have been called to my attention by counsel, by points or otherwise, it will be my duty to determine it, but I leave the whole evidence to you to determine the case upon that evidence. That is certainly one of the controlling questions in the case. For if that debt was not assumed, then the action of Mr. James L. Leeds in canceling the lease, in canceling the old judgment note and the agreement, was a fraud on the rights of his copartners and of the creditors, and he had no right to it. [If it was for an existing firm debt, a debt which had been assumed by his other partner, and the obligation was not varied, and that, too, I think you have got to determine as a question of fact, then he had a right to do it, the question involving many considerations.] [1]

Plaintiff's points and the answers thereto among others were as follows :

4. If the jury believe from the evidence that the said James L. Leeds made and confessed the judgment note which is the subject of this suit for a valid subsisting debt of the firm, or for a debt which originally being an individual indebtedness had been assumed by the firm, then the verdict should be for the plaintiff. *Answer :* That is affirmed. [4]

9. If the jury decide from the evidence adduced before them that the firm assumed the payment of the indebtedness due to· Adams they will render a verdict for the plaintiff for the amount of the judgment note, including the attorney's commission provided for therein, together with legal interest on the principal sum of the judgment note to date of verdict. *Answer :* That is affirmed. [5]

Verdict and judgment for plaintiff for $9,530.67. Defendants ·appealed.

*Errors assigned* were (1, 2, 4, 5) above instructions, quoting them.

*Edgar J. Pershing* and *George Wharton Pepper,* for appellants.—The representative right of a partner to act for his associates is not a general, but a restricted, right. The reason for the restriction is that when he acts he binds the separate estates of his associates. Therefore, the condition under which he may act must be such as to minimize the danger of fraud upon the other partners : Parsons on Part. (2d ed.) sec. 120.

It is the rule of the common law that a partner may not bind his associates by an instrument under seal : Parsons on Part. sec. 121 ; Dubois's App., 38 Pa. 231 ; Schmertz v. Shreeve, 62 Pa. 457.

Upon the same principle one partner may not direct an attorney to appear for the firm : George on Part. sec. 94.

In Pennsylvania there is a line of cases which recognizes the validity of a judgment confessed by a partner, to the extent of treating it as binding upon the firm assets and upon the separate estate of the confessing partner. The rule is stated and the authorities are cited by Mr. Justice MITCHELL in McCleery v. Thompson, 130 Pa. 443. It is obvious, however, that the power thus given to the partner is an exception to the general common-law rule. It ought not to be extended ▄beyond the

limit which business convenience and the adjudicated cases indicate as the proper limit upon its exercise. The limit is this: If the debt is due by the firm, and the creditor has a present right to sue, the giving of a judgment note imposes no new or original liability upon the firm, but merely aids the creditor in the enforcement of an existing right. Such a case was that of Boyd v. Thompson & Coxe, 153 Pa. 78.

*Francis Chapman*, with him *S. Spencer Chapman*, for appellee.—That it is undoubtedly within the power of a partner to give a judgment, even where the debt canceled by the giving of a judgment is not yet due and payable, is decided in Barnett's App., 2 Walker, 355, Moir v. Emerick, 3 Montgomery, 159, Seitz v. Keim, 1 Northampton, 397, and Candee's App., 191 Pa. 644.

Per Curiam, February 26, 1900:

The only question to which consideration was given on the trial of the case was whether the indebtedness of Leeds to Adams was assumed by the partnership. It was a question of fact referred to the jury for determination upon the evidence. The verdict was in accord with the evidence, and established the claim of the plaintiff that the debt was assumed by the firm. There was nothing in the charge opposed to the decision of the jury or requiring a reversal of the judgment. The learned counsel representing the defendants on the appeal were not participants in the trial, and were virtually limited to the discussion of the question not raised or considered in the court below. Their argument was ingenious and able, but as it related to a question not fairly before us, we decline to consider it. In view of the evidence in the case and the facts established by it we cannot convict the court below of error in any of the rulings or instructions complained of.

A judgment confessed by one partner in the firm name, for a firm debt, is good against the partner confessing it, and under it partnership goods may be taken in execution: Grier v. Hood, 25 Pa. 430; Ross v. Howell, 84 Pa. 129.

Judgment affirmed.